IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 FEB 29 P 3: 48

CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

| | |
|---|---|
| ARNOLDO BONILLA, | * |
| Plaintiff, | * |
| v. | Case No.: GJH-14-3055 |
| DOPS, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this action, Plaintiff Arnoldo Bonilla alleges violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Laws, ("MWHL"), Md. Code Ann., Lab & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl. §§ 3-501 *et seq.*, against his former employer, DOPS, Inc. ("DOPS" or "Defendant"). *See* ECF No. 1. This Memorandum Opinion and accompanying Order address Plaintiff's Motion for Summary Judgment. ECF No. 19. A hearing is unnecessary. *See* Loc. R. 105.6 (D. Md.). For the reasons stated herein, Plaintiff's Motion will be granted, in part, and denied, in part.

I.  BACKGROUND[1]

DOPS is a beer and wine wholesaler and delivers its products, which it purchases from other companies, to customers in Maryland, Washington, D.C., and Delaware. ECF No. 19-3 at

---

[1] All facts are viewed in the light most favorable to the Defendant, who is the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

26–27.[2] It is an "enterprise engaged in commerce" as that term is defined under the FLSA. *See id.*; ECF No. 19-8 at 6; *see also* 29 U.S.C. § 203(s)(1)(A). From February 25, 2014 through June 27, 2014, Plaintiff was employed by DOPS as a truck driver. ECF No. 19-3 at 2–3; ECF No. 19-8 at 8. His principal responsibility was to transport deliveries from the DOPS warehouse in Fort Washington, Maryland to customers in Washington, D.C. ECF No. 19-3 at 4.

Although there was no set time for when Plaintiff was required to report to work in the morning, Plaintiff would generally arrive for work around 6:00 a.m. ECF No. 24-1 at 3–4. When he arrived, he helped load his truck with merchandise, with the assistance of three or so other employees. *Id.* at 3. That process generally took anywhere from a half an hour to an hour on most days, but would occasionally take longer than one hour. *Id.* After receiving his route for the deliveries, Plaintiff would depart the Fort Washington warehouse, and then make a stop at the DOPS warehouse in Washington, D.C. before going to make each of the required deliveries. *Id.* For each delivery, Plaintiff was required to record on a "run sheet" the time he arrived at the delivery location, how the customer paid for the delivery, what merchandise was delivered, the mileage on the truck, and other pertinent information. *Id.* at 4. At the end of each day, Plaintiff returned to the Fort Washington facility where the inventory from that day's deliveries was reviewed. *Id.* at 3. Plaintiff then had to drop off the run sheet and turn in any cash collected from the deliveries to a secretary. *Id.* at 11. According to Plaintiff, there were some days when the end-of-day routine lasted three to four hours. ECF No. 24-2 at 7. Plaintiff generally worked Monday through Friday but, on at least one occasion, he worked on Saturday as well. *See* ECF No. 19-3 at 27–28.

---

[2] All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

The dispute in this case revolves around DOPS's wage payment policies. According to DOPS, all of its employees are salaried workers, meaning they are paid a weekly salary, regardless of the hours they work. Specifically, according to DOPS's director of operations, John Dieringer, when a prospective employee applies for a position at DOPS, Dieringer explains their compensation process as follows:

> Usually I ask the applicant what he's looking for [as a salary] . . . and they give me a number, and looking at their experience and just my interview, . . . I tell them what they're going to be paid. I do let them know they're salar[ied]. . . . Most of them come in with a number they want to make an hour, so I tell them, all right, if you want 12, I'll pay you 13, and then, I go over that we're salaried employees, whether you work four hours or you work ten, you still get the [same compensation] twice a month, on the 15th or whatever the last day of the month is.

ECF No. 24-1 at 14. During a typical pay period, DOPS compensated employees for 86.7 hours of work, which, in Plaintiff's case, equated to a gross wage of $1,127.10 per pay period, or an hourly rate of $13 per hour. *See id.*; ECF No. 19-4; ECF No. 24-2 at 3. But if Plaintiff, or any other employee, did not come to work for an entire day, he was not compensated for that day. ECF No. 24-1 at 7. This policy applied regardless of whether DOPS was closed due to weather, or if the employee called out of work for personal or health reasons. *See id.* at 10; ECF No. 19-3 at 17. So, for example, if in one semi-monthly pay period Plaintiff did not come to work for one day, he was compensated for only 78.7 hours of work, grossing $1023.10 for that pay period. ECF No. 19-4. According to Dieringer, when employees worked on the weekends, they were paid extra, and if they worked fewer hours in a normal workday, they were compensated for the full day. ECF No. 19-3 at 16–17. DOPS has no written sick leave or vacation policy. ECF No. 19-3 at 20–21. Additionally, DOPS did not have any system of tracking the actual hours that their employees worked. Although the "run sheets" indicated the times that a driver arrived at a particular delivery location, no records exist as to the precise number of hours Plaintiff, or any

other employee, worked during the time of Plaintiff's employment with DOPS. *See* ECF No. 19-3 at 14.

DOPS also has a policy of deducting from drivers' wages when the driver receives a ticket for a moving violation during the course of their delivery route. *See* ECF No. 24-1 at 10. For instance, if a driver receives a ticket from a traffic camera, when that ticket arrives to DOPS in the mail, the driver is notified, DOPS pays the ticket, and the payment is deducted from the driver's paycheck. *Id.* Although DOPS used to simply pay all of its drivers' tickets when they were received during the course of their deliveries, that policy led to abuse because drivers would ignore traffic and parking laws to make their deliveries as quickly as possible. ECF No. 24-1 at 10. DOPS changed its policy, therefore, to deduct the cost of such tickets from the drivers' wages, a policy which Dieringer orally explained to employees when they began working. *Id.* During the course of his employment with DOPS, Plaintiff received several tickets, totaling over $700. ECF No. 24-1 at 10, 14; ECF No. 24-4. Plaintiff requested that his paychecks be deducted in installments, and DOPS agreed. ECF No. 19-8 at 6. On June 27, 2014, Plaintiff quit his job at DOPS, at which time DOPS had deducted only $370 from his paychecks. *See* ECF No. 19-4.

On September 27, 2014, Plaintiff filed the Complaint against DOPS for unpaid wages under the FLSA, MWHL, and MWPCL. *See* ECF No. 1. DOPS filed an Answer to the Complaint on November 10, 2014. ECF No. 9. Plaintiff now moves for summary judgment on all of his claims. *See* ECF No. 19.

II. **STANDARD OF REVIEW**

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (citing Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). Importantly, at the summary judgment stage, it is not the Court's function to weigh the evidence but simply to decide if there is a genuine issue for trial. *Id.* at 249. A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt," *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001), such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575 (1968).

III.     **DISCUSSION**

      **A. FLSA and MWHL Claims**

The FLSA requires that employers pay nonexempt employees at least the federal minimum wage for all hours worked and overtime pay for hours worked in excess of 40 hours

per week. 29 U.S.C. §§ 206, 207. FLSA regulations require that employers keep and maintain accurate records of all hours worked for each employee. *See* 29 C.F.R. § 516.2. "The MWHL similarly requires that employers pay the applicable minimum wage to their employees and, in [§§ 3-415 and 3-420 of the Labor and Employment Article], that they pay an overtime wage of at least 1.5 times the usual hourly wage for each hour worked in excess of forty hours per week." *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 275–76 (D. Md. 2014) (internal quotation marks and citations omitted). "The MWHL is 'the State parallel' to the FLSA, and the requirements of that provision 'mirror those of the federal law[.]' Thus, [Plaintiff's] claim under the MWHL 'stands or falls on the success of [his] claim[] under the FLSA.'" *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (quoting *Friolo v. Frankel*, 819 A.2d 354, 361 (Md. 2003); *Turner v. Human Genome Sci., Inc.*, 292 F.Supp.2d 738, 744 (D.Md.2003)). Plaintiff does not specify, either in his Complaint or in his memorandum in support of his Motion for Summary Judgment, whether he alleges violations of the minimum wage or overtime pay provisions of the FLSA and the MWHL. But because Plaintiff nowhere alleges that he was entitled to one and one half times his regular salary for the times he worked in excess of forty hours in a given week—indeed, his Complaint does not so much as mention the word "overtime"—the Court assumes that Plaintiff's claim is for a violation of the FLSA's and MWHL's minimum wage requirement.[3]

---

[3] Indeed, if Plaintiff were to attempt to make out a claim for overtime wages, as a driver of a "motor private carrier," the FLSA's overtime requirements do not apply to him. *See* 29 U.S.C. § 213(b)(1) (providing that FLSA's overtime payment requirements "shall not apply with respect to . . . any employee with respect to which the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."); 49 U.S.C. § 31502 ("The Secretary of Transportation may prescribe requirements for . . . qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation."); 49 U.S.C. §§ 13102, 13501 (defining "motor private carrier" as a "person . . . transporting property by motor vehicle when . . . the person is the . . . bailee of the property being transported" and "the property is being transported for sale" between states). So, too, for Plaintiff's claim under Maryland law. *See Veney v. John W. Clarke, Inc.*, 28 F. Supp. 3d 435, 441 (D. Md. 2014) ("Maryland's statutory right to overtime compensation is parallel to the same right under the FLSA. Further, Maryland grants the same

Both the FLSA and MWHL "exempt certain categories of employees [from their minimum wage requirements], including those working in a 'bona fide executive, administrative or professional capacity.'" *Turner*, 292 F. Supp. 2d at 744 (quoting 29 U.S.C. § 213(a)(1); Md.Code Ann., Lab. & Empl., § 3-403). "In the Fourth Circuit, an employer bears the burden of proving, 'by clear and convincing evidence,' that an employee falls within the . . . exception." *Calderon v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 428, 435 (D. Md. 2012), *aff'd*, 809 F.3d 111 (4th Cir. 2015) (quoting *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 691 (4th Cir. 2009)). Additionally, "FLSA exemptions are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within the exemptions' terms and spirit." *Id.* (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453 (1960)).

Both the FLSA and the MWHL "rely on regulations to define and interpret the exemption provisions." *Turner*, 292 F. Supp. 2d at 744. Here, the dispute between the Parties involves interpretation of 29 C.F.R. § 541.602, which provides, in relevant part:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to [certain] exceptions . . . , *an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked*. Exempt employees need not be paid for any workweek in which they perform no work. *An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business*. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

---

exemption as is granted in federal law by the [Motor Carrier Act's ("MCA")] exemption. Consequently, if the MCA exemption defeats Plaintiffs' claim under the FLSA, then it will also defeat their state law claim to overtime compensation.").

7

29 C.F.R. § 541.602(a) (emphasis added). The prohibition against deductions from pay is subject to certain exceptions, however, including that "[d]eductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability" and that "[d]eductions from pay may be made for absences of one or more full days occasioned by sickness or disability . . . if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability." 29 C.F.R. § 541.602(b)(1)–(2).

The "salary basis" regulation is an implementing regulation of 29 U.S.C. § 213. Before even considering the "salary basis" test under 29 C.F.R. § 541.602, therefore, it must first be determined whether the employee falls within the ambit of any exception under § 213 of the FLSA. "The employer must satisfy both a 'salary basis' test and a 'primary duties' test to demonstrate that an employee qualifies for [an] exemption" under § 213. *Altman v. Sterling Caterers, Inc.*, 879 F. Supp. 2d 1375, 1381 (S.D. Fla. 2012); *see also* ECF No. 19-10 at 1 (noting in Department of Labor opinion letter that an employee may qualify for an exemption under § 213 of FLSA "if all of the pertinent tests relating to duty, salary level and salary basis . . . are met"). Neither Plaintiff nor DOPS, however, has addressed the threshold question of whether Plaintiff falls within any exemption under § 213. Although the Court doubts that Plaintiff's job duties would fall within the ambit of any of the exceptions under § 213, the Court need not resolve whether Plaintiff qualified as a salaried employee at this juncture. Even assuming Plaintiff was inappropriately classified as a "salaried" employee under the FLSA, he cannot succeed on his Motion for Summary Judgment because he has failed to satisfy his burden of demonstrating that there is no genuine dispute as to DOPS' violation of the FLSA or MWHL's minimum wage requirements.

In the Complaint, Plaintiff alleges that he frequently worked more than forty hours per week, and that DOPS failed to compensate him for all hours worked. ECF No. 1 at ¶¶ 12, 19. Specifically, he alleges that, because he must be classified as an hourly employee, "defendant, as employer for Plaintiff, was obligated to compensate Plaintiff for all hours worked." ECF No. 1 at ¶ 28. But this baseline premise, upon which Plaintiff bases his entire argument in his Motion for Summary Judgment, ECF No. 19-1 at 5, 15, 17, is incorrect. This Court has made clear that "[t]he FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage." *Avery v. Chariots For Hire*, 748 F. Supp. 2d 492, 501 (D. Md. 2010); *see also Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969) (finding that "there was no statutory violation [under the FLSA] so long as each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate." (internal quotation marks and citation omitted)); *cf. Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 563 (S.D.N.Y. 2012) (finding no violation of minimum wage laws where federal and New York minimum wage was $7.25 per hour and plaintiff acknowledged at her deposition that she earned between $13.00 and $21.00 per hour during her employment with the defendant). Rather, to recover under the FLSA, a "[p]laintiff must demonstrate that *for each week* between [his dates of employment] when he alleges a minimum wage violation, the total amount paid in a week divided by the total hours worked in a week results in an average hourly rate that falls below the minimum wage." *Tall v. MV Transp.*, No. CIV.A. DKC 13-2306, 2014 WL 2964279, at *5 (D. Md. June 30, 2014) (emphasis added).

Based upon the evidence in the record, the Court cannot conclude that there is no genuine dispute as to the number of hours Plaintiff worked during each week of his employment with

DOPS and whether the wages he was paid were insufficient to compensate for those hours worked. *Cf. Tall*, 2014 WL 2964279, at *5 ("To the extent Plaintiff argues that between August 8, 2010 and January 2011 he was not paid for time spent inspecting his vehicle, his allegations are insufficient to show that he was not paid the statutory minimum wage for each of the total number of hours he worked."). Notably, in an FLSA case, "the employee has the initial burden of proving that []he was improperly compensated." *McFeeley*, 47 F. Supp. 3d at 276 (citation omitted). And, although recovery cannot be denied because the plaintiff's "proof of the number of hours worked is inexact or not perfectly accurate," *id.* (citation omitted), a plaintiff's evidence with respect to the number of hours he worked must still be credible. *See Lopez v. Lawns 'R' Us*, No. CIV. DKC 07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008) (citing *Donovan v. Kentwood Development Co., Inc.*, 549 F.Supp. 480, 485 (D. Md.1982)) ("An employee's testimony as to his recollection of the hours he worked and the pay he received, *if considered credible by the trier of fact*, is sufficient to establish a prima facie case of wages owed." (emphasis added)). In his response to interrogatories, Plaintiff indicated that he worked six hours on Saturdays, six hours on Mondays, and between twelve and fourteen hours on all other days of the work week.[4] ECF No. 19-5 at 5. In his deposition, however, Plaintiff testified that he worked between sixteen and seventeen hours in one workday. *See* ECF No. 24-2 at 4, 7–8. Given these conflicting accounts, the evidence provided by Plaintiff in support of his Motion reveals that there is a genuine dispute of material fact regarding, *inter alia*, the number of hours Plaintiff worked per week and whether the weekly compensation he received was insufficient to compensate him for those hours. *See Brown*, 280 F.R.D. at 242 (denying summary judgment on

---

[4] If the hours set forth in Plaintiff's interrogatories controlled, even considering the maximum hours that he contends he worked in any given workweek—six hours on Monday, fourteen hours on each day Tuesday through Friday, and six hours on Saturday—and considering the lowest weekly wage he received during his employment at DOPS, it appears that Plaintiff earned what would equate to approximately $7.50 per hour. *See* ECF No. 19-4; ECF No. 19-5 at 5.

10

FLSA claim and concluding that there was a genuine dispute as to the number of hours plaintiffs worked where plaintiffs' declarations and interrogatories provided differing estimates on the number of hours they worked each week). The Court, therefore, must deny Plaintiff's Motion for Summary Judgment as to his claims under the FLSA and MWHL.

### B. MWPCL Claim

Plaintiff also moves for summary judgment on his claim under the MWPCL. Among other things, the MWPCL prohibits an employer from "mak[ing] a deduction from the wage of an employee" unless one of four conditions is satisfied. *See* Md. Code Ann., Lab. & Empl. § 3-503. A deduction is permitted if it is:

> (1) ordered by a court of competent jurisdiction; (2) authorized expressly in writing by the employee; (3) allowed by the Commissioner because the employee has received full consideration for the deduction; or (4) otherwise made in accordance with any law or any rule or regulation issued by a governmental unit.

*Id.* Additionally, under the MWPCL, if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." Md. Code Ann., Lab. & Empl. § 3-507.2(b).

Plaintiff contends that DOPS's policy of deducting from its employees' wages the cost of any traffic ticket violates this provision.[5] Specifically, he contends that the $370 deducted from his paychecks to pay tickets received during the course of his employment was improper. ECF No. 19-1 at 23–24. In its opposition to Plaintiff's Motion, DOPS does not seriously contend that it abided by § 3-503. It argues only that "DOPS . . . [has] a policy regarding deductions for costs the company incurs as a result of its driver's moving and parking violations, although it is not

---

[5] Although the MWPCL does not explicitly provide for a private right of action for claims under § 3-503, *see* Md. Code Ann., Lab. & Empl. § 3-507.2 (providing a private right of action "if an employer fails to pay an employee in accordance with § 3-502 or § 3-505 of this subtitle"), the Court of Appeals of Maryland recently clarified that § 3-507.2 impliedly allows for such an action. *Marshall v. Safeway Inc.*, 88 A.3d 735, 743–46 (Md. 2014).

written." ECF No. 24 at 12. Because any such policy was not "authorized expressly in writing" by Plaintiff, the deductions taken from Plaintiff's wages to pay for the traffic and parking infractions were taken in violation of § 3-503. Additionally, DOPS makes no real argument that the deductions were a result of a "bona fide dispute." Although an incorrect belief of the law may form the basis of a bona fide dispute, *see Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 629 (Md. 2014), DOPS failed to provide any evidence that it thought it had any legal right to deduct those funds absent written permission from Plaintiff, or without satisfying any of the other three conditions set forth in § 3-503. Thus, Plaintiff is entitled to summary judgment on this claim, and he is entitled to damages in the amount of $1110, representing treble damages for the $370 improperly deducted from his wages, as well as attorneys' fees and costs at an amount to be determined after resolution of Plaintiff's other claims.[6]

---

[6] In the wake of *Marshall, see* footnote 5 of this Memorandum Opinion, in an opinion from this district, the Court concluded that the plaintiff was only entitled to damages under § 3-503 in an amount equal to the plaintiff's damages for her FLSA claim, that is, the difference between the wages paid and the applicable minimum wage. *Mould v. NJG Food Serv. Inc.*, No. CIV. JKB-13-1305, 2014 WL 2768635, at *6 (D. Md. June 17, 2014). In that case, however, the alleged violation of § 3-503 involved a purported improper tip pooling arrangement for servers at a restaurant. Because the alleged improper deduction was the basis of the plaintiff's FLSA claim, the Court concluded that, if the plaintiff prevailed on his § 3-503 claim, it would be "on the basis that (1) Defendants' tip pooling arrangement did not satisfy the requirements of the FLSA and MWHL; (2) Defendants, therefore, could not take a tip credit in calculating Plaintiff's wages; (3) as a result, Plaintiff's wage of $3.63 an hour . . . was below minimum wage; and (4) thus Defendants made an unlawful deduction from Plaintiff's lawful wages." *Id.* Here, however, Plaintiff's claim under § 3-503 is largely unrelated to his claims under the FLSA and MWHL. Although the $370 deduction over the course of several pay periods may have resulted in Plaintiff's wages falling below the minimum wage for those weeks, the deductions made without Plaintiff's prior written authorization is a violation of § 3-503 regardless of whether he prevails on his FLSA and MWHL claims. *See Schultz v. All-Fund, Inc.*, No. CIV. JFM 06 CV 2016, 2007 WL 2333049, at *6 (D. Md. Aug. 13, 2007) (awarding as damages the amount deducted from plaintiff's paycheck in violation of the MWPCL).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED** in part, and, **DENIED**, in part. Judgment will be entered in Plaintiff's favor on his MWPCL claim in the amount of $1110, exclusive of attorneys' fees and costs. A separate Order follows.

Dated: February 29th, 2016

GEORGE J. HAZEL
United States District Judge